David W. Tufts (Utah Bar # 8736)
Brooke N. Edwards (Utah Bar #14268)
**DURHAM JONES & PINEGAR, P.C.**
111 S. Main Street, Suite 2400
Salt Lake City, UT 84111
801-415-3000
dtufts@djplaw.com
bedwards@djplaw.com

Nathan Garroway (Ga. Bar # 142194, *PHV* forthcoming)
Jeffrey Zachman (Ga. Bar # 254196, *PHV* forthcoming)
**DENTONS US LLP**
303 Peachtree St. NE
Atlanta, GA  30308
404-527-4000
nathan.garroway@dentons.com
jeffrey.zachman@dentons.com

*Attorneys for Kabbage, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **PIA ANDERSON MOSS HOYT, LLC,** a Utah limited liability company,<br><br>              Plaintiff,<br>v.<br><br>**KABBAGE, INC.** a Delaware corporation,<br><br>              Defendant. | **NOTICE OF REMOVAL**<br><br>Civil Case No. _____<br><br>Honorable _____ |

Defendant Kabbage, Inc. ("Kabbage") hereby removes to this Court the state court action described below.  Kabbage has a right of removal and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1446, and in accordance with 28 U.S.C. §§ 1331 and 1332 because there is complete diversity among the parties and this case arises under the laws of the United States.

1.       On August 21, 2020, Plaintiff Pia Anderson Moss Hoyt, LLC, a law firm in Salt Lake City, Utah, commenced this action by filing a complaint in the Third Judicial District Court

in and for Summit County, Utah, Case No. 200905238.  Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint and all other pleadings in the state court file are attached hereto as **Exhibit A**.

2.      The Complaint alleges that Kabbage and Altabank[1] are liable based on their acts as a lender and agent to Plaintiff under the Coronavirus Aid, Relief and Economic Security Act, H.R. 748 ("CARES Act"), "a $2 trillion stimulus package signed in to [federal] law on March 27, 2020," and the Payroll Protection Program ("PPP"). (DE 1-1, Compl. ¶¶ 2–3).

3.      The crux of this dispute is Plaintiff's allegation that Kabbage failed to properly inform Plaintiff about and then include K-1 partnership income on Plaintiff's PPP loan application. (*Id.* ¶¶ 6, 12–14).

4.      Plaintiff alleges that it suffered damages of $145,833 because it did not receive that sum in PPP loan money based on its eligible K-1 partnership income. (*Id.* ¶ 6).

5.      Plaintiff asserts four causes of action: negligence against Kabbage, negligence against Altabank, negligent misrepresentation against Kabbage and Altabank, and breach of fiduciary duty against Kabbage.

6.      Although Plaintiff has artfully pled only state causes of action, each  is entirely dependent on federal law: namely, whether Plaintiff was entitled to list and receive its K-1 partnership income in calculating its requested loan amount under the PPP during the relevant time period, whether Kabbage properly administered and advised Plaintiff regarding the PPP program,

---

[1] Although the Complaint names Kabbage and Altabank as Defendants, Plaintiff subsequently dismissed Altabank from the underlying state-court action without prejudice. Kabbage is the only remaining Defendant.

what duties Kabbage owed, if any, to Plaintiff under the CARES Act, and whether Plaintiff has a cause of action under the CARES Act.

7.      Kabbage is the only remaining Defendant.

8.      Notice of the filing of this Notice of Removal has been provided to Plaintiff by service of a copy of this Notice of Removal upon its attorneys as required by 28 U.S.C. § 1446(d).

9.      A true and correct copy of this Notice of Removal will be filed with the Clerk of the Third Judicial District Court in and for Summit County, in accordance with the provisions of 28 U.S.C. § 1446(d), along with a Notice of that filing.

## TIMELINESS OF REMOVAL

10.     Kabbage was served with the complaint on August 27, 2020 (proof of service attached as **Exhibit B**). In accordance with 28 U.S.C. § 1446, this Notice of Removal is timely.

## REMOVAL JURISDICTION

11.     28 U.S.C. § 1441(a) provides for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . .  to the district court of the United States for the district and division embracing the place where such action is pending."

## REMOVAL BASED ON DIVERSITY JURISDICTION

12.     This Court has original jurisdiction over a matter where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs, and [the case] is between— citizens of different States." 28 U.S.C. § 1332(a)(1).

13.     Plaintiff is a Utah limited liability company ("LLC"). LLCs are citizens of each state in which any of its members are citizens. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015) ("[I]n determining the citizenship of an [LLC] for

purposes of diversity, federal courts must include all the entities' members."); *see also Mgmt. Nominees, Inc. v. Alderney Investments, LLC*, 813 F.3d 1321, 1325 (10th Cir. 2016) (holding that LLC citizenship "determined by 'including all the entities' members.'").

14.     On information and belief, no member of the Plaintiff LLC—which is a fourteen-person law firm (eight partners and six non-partner attorneys) with offices in Utah and Texas—is a citizen of Delaware or Georgia.

15.     Defendant Kabbage is a corporation organized under Delaware law with its principal place of business in Georgia. Kabbage is a citizen of Delaware and Georgia because corporations are citizens of their state of incorporation and the state where the corporation has its principal place of business. *See Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) ("For diversity purposes, a corporation is deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.") (quoting 28 U.S.C. § 1332(c)(1)).

16.     Because Plaintiff, based on information and belief, is not a citizen of Delaware or Georgia, there is complete diversity among the parties and the case is "between citizens of different states" under 28 U.S.C. § 1332(a)(1).

17.     The amount in controversy requirement is also satisfied. Plaintiff seeks more than $75,000.00, exclusive of interest and costs, in damages. (*See* Compl. ¶¶ 94, 101, 106; 110 (seeking damages of $145,833.00)).

18.     For these reasons, the Court has subject matter jurisdiction based on the complete diversity among the parties and the amount in controversy.

## REMOVAL BASED ON FEDERAL QUESTION JURISDICTION

19.     This Court also has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," commonly referred to as federal question jurisdiction. 28 U.S.C. § 1331.

20.     This Court has federal question jurisdiction over state-law causes of action that "necessarily depend on [the] resolution of a substantial question of federal law." *Gilmore v. Weatherford*, 694 F.3d 1160, 1170 (10th Cir. 2012) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)); *see also Abdo v. Reyes*, 91 F. Supp. 3d 1225, 1231 (D. Utah 2015) ("[T]he Supreme Court has nevertheless recognized 'the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.'") (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)).

21.     This doctrine ensures that wily plaintiffs "cannot defeat federal court jurisdiction by artfully 'pleading only state-law claims when federal questions are essential elements of [their] claims.'" *Abdo*, 91 F. Supp. 3d at 1231 (quotation omitted); *see also Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1234 (10th Cir. 2006) ("[A] plaintiff may not circumvent federal jurisdiction by omitting federal issues that are essential to his or her claim.").

22.     Plaintiff has directly attempted to defeat federal jurisdiction. 87 paragraphs of the complaint allege that Kabbage failed to properly administer a brand-new, emergency, federal statute (the CARES Act).

23.     The complaint further alleges why Kabbage is liable based on several different iterations of rules passed by the Federal Small Business Administration, concerning K-1

partnership income under the PPP and the ability to retroactively amend partnership loan applications. (Compl. ¶¶ 61–71).

24.     Yet, Plaintiff's causes of action are all state-law claims. But Plaintiff cannot avoid federal courts given the substantial federal questions the factual allegations raise. And this case is a textbook example for the invocation of the substantial federal question doctrine.

25.     There is a four-part test for determining if removal is proper based on state-law claims that turn on substantial federal questions. "[A] state-law claim (1) must necessarily raise a federal claim that is both (2) actually disputed and (3) substantial; and (4) that may be resolved in a federal forum without disturbing the balance of federal and state judicial responsibilities." *Abdo*, 91 F. Supp. 3d at 1231 (internal quotations omitted). All factors are met here.

    **A.**    **Plaintiff's state-law claims necessarily raise disputed and substantial federal questions.**

26.     Plaintiff's state-law claims for negligence, negligent misrepresentation and breach of fiduciary duty necessarily raise disputed and substantial federal claims.

27.     The Tenth Circuit has explained that a federal issue is substantial where some point of federal law is an "element of the state law claim." *Gilmore*, 694 F.3d at 1171. Federal issues may also be substantial where "the federal government has 'a direct interest in the availability of a federal forum to vindicate its own administrative action.'" *Id.* at 1172. (quotation omitted). Another factor that points in favor of a substantial federal issue is where a case presents a "nearly pure issue of law" that would govern "numerous cases" as opposed to claims that are "fact-bound and situation-specific." *Id.*

28.     Plaintiff's first claim, negligence against Kabbage, alleges that:

> 89.     Kabbage owed a duty to PAMH [Plaintiff] as its loan agent and processor to educate itself about the PPP . . .

90.     Kabbage owed a duty to PAMH to keep apprised and abreast of amendments and clarifications of the PPP through SBA publications such as the Partner Income Rule and Loan Increase Rule.

91.     Kabbage owed a duty to PAMH to aid PAMH to receive the full amount of PPP funds PAMH was entitled to receive under federal law.

29.     All of Kabbage's purported duties under this claim derive, if at all, from federal law.

30.     Kabbage disputes that it owed any duty to Plaintiff under the CARES Act.

31.     These federal legal issues are not only disputed, but substantial for at least three reasons.

32.     First, the federal issue is an essential element of Plaintiff's claim: if Kabbage did not owe any duty to Plaintiff under the CARES Act then there is no negligence claim.

33.     Second, the federal government has an interest in vindicating its own administrative action in a federal forum in this case. Kabbage's role as a lender and agent under the PPP was part of a greater statutory scheme for banks and financial companies to assist the Small Business Administration in disbursing hundreds of billions of dollars in loans. Under this statutory scheme, the SBA passed numerous rules. This rulemaking included at least two rules relied on heavily in the Complaint, the SBA's "Partner Income Rule" (Compl. ¶¶ 61–64) and the SBA's "Loan Increase Rule" (Compl. ¶¶ 67–70).

34.     Third, this case presents almost purely legal issues that could have serious ramifications for other PPP lenders and agents. The primary legal question at issue is what duties, if any, Kabbage owed under federal law and the effect of two SBA rules generally on lenders and agents who either declined to amend partnership PPP loans and/or did not submit PPP applications with partnership income included.

35.     Plaintiff's second, third, and fourth causes of action similarly implicate disputed and substantial federal issues.

36.     For example, the third count—negligent misrepresentation against Kabbage—alleges that Kabbage made "false representations to PAMH that Partner Income could not be included as an eligible payroll cost on its PPP application." (Compl. ¶ 103).  Plaintiff further claims in this count that "Kabbage also made a false representation to PAMH that in order to claim additional PPP funds under the Loan Increase Rule, PAMH was required to return all of the PPP funds it had previously received." (Compl. ¶ 104). Again, this count turns on disputed legal issues regarding what Kabbage was required or permitted to do under the PPP.

**B.     The Court can resolve these substantial federal disputes without disrupting the balance between state and federal courts.**

37.     The second inquiry for the Court is whether it can resolve these substantial questions without upsetting the state and federal balance of judicial responsibility.

38.     This Court may resolve these important federal issues without disturbing the balance between this Court's and Utah state courts' responsibilities.

39.     The key point to this inquiry is "whether removal would federalize a garden-variety tort, contract, or fraud claim, or whether there is some uniquely federal aspect of the case that, if removed, could be adjudicated in federal court without subjecting the federal courts to a flood of original filings or removals." *Darr v. New Mexico Dep't of Game & Fish*, 403 F. Supp. 3d 967, 1012–13 (D.N.M. 2019).

40.     Here, there is little risk that the removal would federalize garden-variety negligence claims because this removal is premised specifically on Kabbage's actions under the CARES Act.

41.     Federal courts have recently begun addressing disputes concerning claims brought under and concerning various issues related the CARES Act, including whether the CARES Act provides a cause of action against lenders and agents under the PPP. *See, e.g.*, *Profiles, Inc. v. Bank of Am. Corp.*, No. CV SAG-20-0894, 2020 WL 1849710, at *7 (D. Md. Apr. 13, 2020) (finding that congress did not intend to create a private right of action under the CARES Act).

42.     Federal courts are the preferred venue for interpreting new issues of federal law with national import. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 825–26, 96 S. Ct. 1236, 1250, 47 L. Ed. 2d 483 (1976) ("A federal court is more likely than a state court to be familiar with federal law and to have had experience in interpreting the relevant federal statutes, regulations . . . [I]f tried in a federal court, these issues of federal law will be reviewable in a federal appellate court . . .").

43.     For these reasons, the Court has subject matter jurisdiction over this action based on its federal question jurisdiction.

## **CONCLUSION**

Accordingly, and pursuant to  28 U.S.C. § 1331, and 28 U.S.C. § 1441, Kabbage hereby removes this action to the United States District Court for the District of Utah based on the Court's federal question jurisdiction.

Dated:  September 15, 2020.

**DURHAM JONES & PINEGAR, P.C.**

 /s/  David W. Tufts
David W. Tufts
Brooke N. Edwards
111 S. Main Street, Suite 2400
Salt Lake City, UT 84111
Phone: 801-415-3000
Fax: 801-415-3500

**DENTONS US LLP**

*/s/ Jeffrey Zachman*
Nathan Garroway
(*pro hac vice application* forthcoming)
Jeffrey Zachman
(*pro hac vice application* forthcoming)
303 Peachtree St. NE
Atlanta, GA  30308
Phone: 404-527-4000
Fax: 404-527-4198

*Attorneys for Kabbage, Inc.*

10

## **CERTIFICATE OF SERVICE**

I  hereby certify that on September 15, 2020, I caused a true and correct copy of the foregoing to be filed using the Court's CM/ECF electronic filing system, which provides service to all counsel of record, and I have also served the foregoing via first class mail and email upon the following:

William O. Kimball
Anthony M. Grover
PIA ANDERSON MOSS HOYT, LLC
136 E. South Temple, Suite 1900
Salt Lake City, UT 84111
Email: bkimball@pamhlaw.com
          tgrover@pamhlaw.com

*Attorneys for Plaintiff*

Altabank
33 East Main St.
American Fork, UT 84003

*Co-Defendant*

_/s/ David W. Tufts_____
David W. Tufts

# EXHIBIT A

Exhibit A - State Court File

William O. Kimball (9460)
Anthony M. Grover (10426)
**PIA ANDERSON MOSS HOYT, LLC**
136 E. South Temple, Suite 1900
Salt Lake City, UT 84111
Telephone: 801-350-9000
Facsimile: 801-350-9010
Email: bkimball@pamhlaw.com
           tgrover@pamhlaw.com

*Attorneys for Plaintiff Pia Anderson Moss Hoyt, LLC*

---

## IN THE THIRD JUDICIAL DISTRICT COURT
## IN AND FOR SUMMIT COUNTY, STATE OF UTAH

| | |
|---|---|
| PIA ANDERSON MOSS HOYT, LLC, a Utah limited liability company, | **SUMMONS** |
| Plaintiff, | |
| v. | Case No. 200905238 |
| KABBAGE, INC., a Delaware corporation, and ALTABANK, a Utah corporation, | Judge Kara Pettit |
| Defendants. | |

**THE STATE OF UTAH TO THE ABOVE-NAMED DEFENDANT:**

KABBAGE, INC.

You are hereby summoned and required to file an Answer in writing to the attached Complaint with the Clerk of the above-captioned Court at **450 South State Street, Salt Lake City, Utah 84114-1860** and to serve upon or mail to Plaintiff's attorneys, William O. Kimball and Anthony M. Grover of PIA ANDERSON MOSS HOYT, LLC, 136 E. South Temple, Suite 1900,

Salt Lake City, Utah 84111, a copy of said Answer within thirty (30) days after service of this Summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in said Complaint.

DATED this 21st day of August 2020.

**PIA ANDERSON MOSS HOYT, LLC**


/s/ Anthony M. Grover
William O. Kimball
Anthony M. Grover
*Attorneys for Plaintiff*

William O. Kimball (9460)
Anthony M. Grover (10426)
PIA ANDERSON MOSS HOYT, LLC
136 E. South Temple, Suite 1900
Salt Lake City, Utah 84111
Telephone: (801) 350-9000
Facsimile: (801) 350-9010
E-mail: bkimball@pamhlaw.com
       tgrover@pamhlaw.com

*Attorneys for Plaintiff Pia Anderson Moss Hoyt, LLC*

**IN THE THIRD JUDICIAL DISTRICT COURT
STATE OF UTAH, COUNTY OF SALT LAKE**

| | |
|---|---|
| PIA ANDERSON MOSS HOYT, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>KABBAGE, INC., a Delaware corporation, and ALTABANK, a Utah corporation.<br><br>    Defendants. | **COMPLAINT**<br><br>Case No.<br><br>Judge<br><br>**JURY TRIAL DEMANDED** |

    Plaintiff Pia Anderson Moss Hoyt, LLC, a Utah limited liability company, by and through undersigned counsel, hereby complains against Defendants Kabbage, Inc. and Altabank and alleges as follows:

## INTRODUCTION

    1.    The outbreak of the Coronavirus disease 2019 ("COVID-19") has posed one of the most unprecedented and severe crises of our time, a crisis which threatens thousands of small businesses throughout this country, including Plaintiff Pia Anderson Moss Hoyt, LLC ("Plaintiff" or "PAMH").

2.      In response to COVID-19's threat to small businesses and the millions of Americans who depend on such businesses for their livelihood, the federal government enacted emergency legislation entitled the Coronavirus Aid, Relief, and Economic Security Act, H.R. 748 ("CARES Act"), a $2 trillion stimulus package signed in to law on March 27, 2020.

3.      One component of the CARES Act is the Payroll Protection Program ("PPP"). The PPP authorizes lenders to make available as much as $349 billion in government-guaranteed, forgivable loans to America's small businesses to cover eligible expenses such as payroll costs and rent for two months.[1]

4.      Facing the impending economic impact of COVID-19, PAMH enlisted Defendants to aid it in applying for the full amount of PPP funds available to it under the CARES Act.

5.      Because the PPP loan pool was both initially limited in size and dispensed on a first-come-first-served basis, PAMH relied on Defendants to expeditiously aid it in applying for the correct loan amount.

6.      During the application process, PAMH repeatedly asked Defendants if its partners' K-1 income could be included as "payroll cost" for purposes of calculating its requested loan amount. PAMH partner income was not insignificant; 2.5 months of partner income, excluding amounts over $100,000 annual income, totaled $145,833 (the "Partner Income"). Money that PAMH, and its partners, several of whom were diagnosed with COVID-19 themselves and whose ability to work was either severely impaired or outright lost, could use to help weather the economic storm brought about by COVID-19.

---

[1] The initial $349 billion was quickly exhausted, but the PPP was later supplemented with an additional $310 billion.

7.      Defendants, however, repeatedly told PAMH (on the rare occasions that they responded to PAMH's inquiries) that partner income was not to be included on its application.

8.      In reliance on Defendants' instruction, and to PAMH's ultimate detriment, PAMH's application did not include the Partner Income as part of its PPP loan application "payroll cost."

9.       PAMH later learned that the Small Business Administration ("SBA") published an interim final rule on April 14, 2020 stating that self-employment income of active partners in a limited liability company such as PAMH, could be included and reported as a "payroll cost" up to $100,000 annualized per partner, for purposes of a PPP loan application.

10.     Despite having notice of the SBA's statement that partner income could, and should, be included as an eligible payroll cost, Defendants did not cause PAMH's PPP application to be amended prior to issuance of its PPP loan (as requested by PAMH) to properly capture the Partner Income. Rather, Defendants remained steadfast in their erroneous assertion that partner income was not to be included and Defendant Kabbage recommended that PAMH execute the loan documents or risk losing out on a PPP loan altogether.  Thus, PAMH executed the PPP loan documents in order to obtain whatever PPP funding it could under the circumstances, as recommended, and a PPP loan was issued to PAMH.

11.     PAMH then learned that the SBA recently published a later interim final rule that allowed borrowers, such as PAMH, to amend their issued PPP loans to allow for additional, follow-up funds disbursements in cases where such applicants had not received PPP funds to compensate their partners pursuant to the April 14, 2020 rule.

12.     Notwithstanding their knowledge that PAMH's application could be amended to include the Partner Income prior to issuance of the PPP loan, and that such loan could also be amended after such issuance, Defendants took no action to either notify PAMH of such rights to amend or to amend the application (or the issued loan) on PAMH's behalf, in accordance with PAMH's repeated requests.

13.     Due to Defendants' negligence, PAMH was deprived of the Partner Income, both initially and during the allowed loan amendment period.

14.     Defendants' failure to properly inform themselves, and PAMH, of PAMH's proper PPP application amount undermines the purpose of the CARES Act as it deprived PAMH of funds that Congress and the President expressly intended for small businesses such as PAMH.

## DESCRIPTION OF THE PARTIES

15.     Plaintiff PAMH is a Utah limited liability company with its principal place of business in Salt Lake City, Utah. PAMH is a small business that qualifies as an eligible applicant for a PPP loan under the CARES Act.

16.     Defendant Kabbage is a Delaware corporation with its principal place of business in Atlanta, Georgia. It has transacted business in this state.

17.     Defendant Altabank is a Utah corporation with its principal place of business in American Fork, Utah and a place of business in Salt Lake County. It transacts business in this state

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action pursuant to Utah Code Annotated § 78A-5-102.

19.     This Court has personal jurisdiction over all defendants to this action where they are conducting or otherwise transacting business within the State of Utah.

20.     Venue properly lies in this Court pursuant to Utah Code Annotated §§ 78B-3-307.

## GENERAL ALLEGATIONS

### The PPP

21.     The CARES Act is the largest economic relief bill in the history of the United States and has allocated over $2.2 trillion in support to both individuals and businesses impacted by COVID-19 and its resulting economic decline.

22.     As part of the CARES Act, PPP provides federally guaranteed loans up to a maximum of $10 million to eligible small business, which can be conditionally forgivable, to encourage those businesses to retain their employees during the COVID-19 pandemic by assisting in the payment of certain operating expenses, including payroll costs.

23.     In simplest terms, PPP allows eligible small businesses (those with 500 or fewer employees) to apply for a forgivable loan that is equal to its average monthly payroll costs multiplied by 2.5, while excluding from such calculation costs over $100,000 on an annualized basis for each employee.

24.     PPP defines "payroll costs" as:

> Compensation to employees (whose principal place of residence is in the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent . . . and for an independent contractor or sole proprietor, wage, commission, income, or net earnings from self-employment or similar compensation.

25.     The single, determining factor for calculating the maximum amount allowed to a small business under PPP is the business's average monthly payroll cost.

26.    Thus, the inclusion of every eligible "payroll cost" on a business's PPP application ensures that small businesses receive the full amount of PPP loan proceeds that Congress and the President intended.

### PAMH Reaches Out to its Banker, Altabank, to Process its PPP Application

27.    PAMH is an existing customer of Altabank.

28.    In order to avail itself of the PPP, PAMH's controller, Jennifer Heaton ("Heaton") contacted Altabank on or about March 30, 2020 to ask whether Altabank was participating as a lender in the PPP.

29.    That same day, Altabank's VP/Relationship Manager, Gerry Hassell ("Hassell") informed Heaton that Altabank was indeed participating in the PPP and recommended that PAMH apply for both PPP and the SBA Disaster Loan program.

30.    Within an hour of Hassell's response, Heaton asked Hassell if partner income could be included as a payroll cost.

31.    Hassell responded that if partners earned more than $100,000, they "do not fall under the paycheck program."

32.    Hassell was mistaken.

33.    On April 1, 2020, Heaton emailed Hassell to verify whether she should only include W-2 employee salary on PAMH's application while excluding partner compensation.

34.    Hassell responded that same day by stating, in part, "I believe No on distributions because those are not technically 'payroll.'"

35.    Again, Hassell was mistaken.

36.     On April 4, 2020, a day after the PPP went live and the SBA began accepting applications, Hassell emailed Heaton to inform her that Altabank was still not yet accepting applications and that due to high demand it would be limiting the amount of funds being allocated to the PPP.

37.     Hassell also directed PAMH to consider other funding options due to the high demand Altabank was experiencing. Hassell then told Heaton about Kabbage, a third-party online loan processor, who was currently accepting applications for the PPP. Hassel included a link to Kabbage's website in his email to Heaton and suggested Kabbage as an alternative application processor.

38.     Hassell closed his email by warning of "the limited amount of funds [Altabank] is applying to these loans, the application being delayed until Tuesday, the unknown availability on Tuesday, and the loan approval process being fairly automated." Based on the foregoing, Hassell encouraged Heaton to look at financing options that might be more viable for PAMH.

39.     The next morning, on April 5, 2020, Hassell emailed Heaton to inform her that Altabank had now officially "partnered" with Kabbage to process PPP loans. Hassell provided Heaton with a link to the PPP application on Kabbage's website. While Hassell told Heaton that PAMH could still choose to submit its PPP application through Altabank, he cautioned her that its online application portal was still not available.

**PAMH Utilizes Kabbage as its PPP Loan Agent and Processor**

40.     Upon learning that Altabank had partnered with Kabbage, and in reliance on Altabank's partnership and endorsement of Kabbage, and with an increasing sense of urgency given the fact that the first-come-first-serve PPP had been accepting applications for two days

now, PAMH chose to complete the PPP application process through Kabbage as its PPP loan agent

and processor.

41.     Heaton used Kabbage's online portal to populate PAMH's PPP application.

42.     Kabbage's online application calculated PAMH's average monthly payroll based

solely on W-2 employee compensation. It did not request K-1 income verification or allow for the

entry of K-1 partner payments as part of its payroll calculation.

43.     Based on Altabank's guidance that PAMH's partner/K-1 income was not an eligible

payroll cost, and because Kabbage's online application system did not allow for the entry of any

payroll other than W-2 employees, Heaton omitted PAMH's partner income from her calculation

of PAMH's average monthly payroll calculation.

44.     Without inclusion of the Partner Income, PAMH's application sought $161,414 in

total.

45.     PAMH's partners are all paid on a K-1 basis and their aggregate payroll cost, while

excluding any amount over $100,000, would have added an additional $145,833 (the "Partner

Income") to PAMH's requested PPP loan amount.

46.      On April 15, 2020, Heaton emailed Kabbage to ask if PAMH's application could

include the Partner Income as an eligible payroll cost. Heaton asked what documentation she could

provide Kabbage with in order to capture this income and how the application could be amended

to include this cost.

47.     Kabbage responded to Heaton's email with the following generated reply:

> Thank you for your email. The current circumstances and impact of COVID-19 on our customers have been unprecedented. We ask for your patience as our current call volumes and emails have spiked 5 times in volume. **To help alleviate this we have moved personnel to customer support to better serve all our customers.**

**If you are inquiring about access to your Kabbage Funding line of credit**, we are working diligently to do all we can to support every business during this difficult time and have put together a number of resources, described further below, to help your business navigate the outbreak. We will inform you should the status of your account change.

**If you are seeking repayment options in this email, please email support@kabbage.com. If you need to speak to someone**, we are asking that only customers whose due date is within 5 days call us during this time at 888-986-8263. We are actively working with customers for deferment options.

**In the meantime, we have put together a number of resources, described further below, to help your business navigate the outbreak.**

**CARES Act -** We're working hard to support the Payroll Protection Program (PPP), which is a part of the CARES Act that is allocating federal relief funds for small businesses. When this program is live, our technology can help businesses get fast access to critical funding.

Until this crisis has passed, we're dedicating all of Kabbage's resources, technology and data to aid the Small Business Administration in this critical effort.

**Sign up here to receive details when the program is accepting applications.**

**We have compiled federal, state, and other emergency relief programs that are available** to small businesses nationwide. Kabbage has set up a special page for this information: https://www.kabbage.com/covid-19. We will keep this updated in the coming days/months to ensure you have the necessary resources during this uncertainty.

**We recently launched a way for small business owners to receive revenue through the purchase of gift certificates**, to learn more and sign up please visit, https://www.kabbage.com/helpsmallbusiness.

Please stay safe and healthy, talk soon.

The Kabbage Team

48.     Kabbage's response only provided a general email for inquiries (support@kabbage.com), a phone number for those whose loan repayment due date is within 5 days (not PAMH's situation), and links to various "resources." Kabbage never responded to Heaton's email.

49.     Between April 15-19, 2020, Heaton and other principals at PAMH repeatedly called the phone number provided by Kabbage to ask about the inclusion of the Partner Income but were unable to reach a representative.

50.     Upon information and belief, Kabbage had furloughed a significant number of employees in late March 2020. *See* https://www.cnbc.com/2020/06/17/kabbage-turned-to-doling-out-ppp-loans-to-save-its-lending-business.html

51.     Upon information and belief, Kabbage saw its participation in the PPP program as either a loan agent/processor or direct lender as a way to resurrect its contracting business.

52.     Upon information and belief, Kabbage was unprepared, due to its significant reduction in workforce immediately preceding the PPP, to handle the surge in PPP applications and questions regarding the program from applicants, such as PAMH, who used Kabbage.

53.     Kabbage knew, or reasonably should have known, that it was unprepared and ill-equipped to meet the needs of PPP applicants such as PAMH who relied on Kabbage to properly understand the PPP and ensure that it received the maximum PPP loan allowable by law.

54.     On April 17, 2020, Heaton received a notification from Kabbage that PAMH's PPP application had been approved, but not yet disbursed, in the amount of $161,414.

55.     After Kabbage submitted PAMH's application, a third-party banker informed PAMH that partner income could indeed be included in a partnership/limited liability company PPP amount. He advised, however, that since Kabbage had already submitted the application, it was the only party who could rectify its mistake

56.     Now knowing that PAMH could in fact seek the Partner Income as part of its application, Heaton contacted Kabbage to request that Kabbage amend PAMH's application so as to include the Partner Income.

57.     PAMH wanted to amend its application prior to signing the final loan documents which would signal PAMH's acceptance of application's deficient amount.

58.     On April 21, 2020, Heaton was able to speak with a Kabbage representative who advised her that partner income was still not includable in PPP loan applications, and that in any case, it was too late for PAMH to modify its application. The Kabbage representative also indicated that PAMH was required to accept the submitted loan amount of $161,414, as is, or else PAMH would not receive any PPP loan funds at all, unless a second round of PPP funding was approved by Congress, and that even in that case, PAMH would likely still be declined by the SBA on any future PPP loan application if it had already been approved for a PPP loan that it declined to accept.

59.     In reliance on this information from Kabbage, and with seemingly no other reasonable choice, and to mitigate its foreseeable potential damages, PAMH executed the SBA loan documents.

60.     PAMH received PPP funds in the amount of $161,414 on or about May 1, 2020.

**The SBA Debunks Altabank's and Kabbage's Guidance that K-1 Partner Income was not an Eligible Payroll Cost**

61.     Unbeknownst to PAMH, on April 14, 2020, the SBA published an interim final rule that, among other thing, provided guidance for individuals with self-employment income (the "Partner Income Rule"). *See* 85 FR 21747.

62.     The Partner Income Rule, which took effect on April 20, 2020, provides, in relevant part:

> …[T]he self-employment income of general active partners may be reported as a payroll cost, up to $100,000 annualized, on a PPP loan application filed by or on behalf of the partnership [and an LLC filing taxes as a partnership].

*Id* at 21748.

63.     The Partner Income Rule later emphasized that partner income should be included with their employer's PPP application by stating:

Partnerships are eligible for PPP loans under the Act, and the Administrator has determined, in consultation with the Secretary of the Treasury (Secretary), that limiting a partnership and its partners (and an LLC filing taxes as a partnership) to one PPP loan is necessary to help ensure that as many eligible borrowers as possible obtain PPP loans before the statutory deadline of June 30, 2020. This limitation will allow lenders to more quickly process applications and lower the burdens of applying for partnerships/partners. The Administrator has further determined that permitting partners to apply as self-employed individuals would create unnecessary confusion regarding which entity, the partner or the partnership, applies for partner and LLC member income, and would generate loan proceeds use coordination and allocation issues.

*Id*.

64.     Thus, Defendants had actual notice on April 14, 2020, one day prior to Heaton's first call to Kabbage seeking guidance on whether the Partner Income could be included, that the Partner Income could not only be included in PAMH's PPP application, but that such inclusion was necessary in order to maximize the PPP's efficiency and reach.

65.     Neither Altabank nor Kabbage, despite knowing on April 14, 2020 that Partner Income should be included on PAMH's PPP application, took any action to either notify PAMH of its right to include the Partner Income on its application or take corrective action to amend PAMH's application on its behalf.

66.     To the contrary, Defendants remained steadfast in their erroneous contention that the Partner Income could not be included in PAMH's payroll calculation.[2]

67.     On May 19, 2020, the SBA published a final interim rule (the "Loan Increase Rule") that further underscored Defendants' erroneous interpretation of the PPP. The Loan

---

[2] During this time period, PAMH learned that other PPP lenders and loan officers/agents were interpreting the PPP as allowing K-1 partner income as an eligible payroll cost. Kabbage's erroneous disallowance of the Partner Income appears to be an outlier as opposed to the industry standard.

Increase Rule allowed borrowers such as PAMH to amend its PPP application in order to apply for partner income not originally included in its application.

68.     Specifically, the Loan Increase Rule states:

> Some PPP loans were approved to partnerships or seasonal employers before the additional guidance [the Loan Increase Rule] was issued and, as a result, those business may not have received PPP loans in the maximum amount for which they are eligible. This interim rule authorizes all PPP lenders to increase existing PPP loans to partnerships . . . to include appropriate amount cover partner compensation in accordance with [the Loan Increase Rule].

*See* 85 CFR 29843-29844.

69.     The Loan Increase Rule authorized a borrower to apply for additional funds to cover partner income even if it had received a full disbursement of its initial PPP loan. Thus, the fact that a borrower such as PAMH had already received a full disbursement of its original PPP loan amount had no bearing on its eligibility to receive additional funds meant to cover previously unapplied for partner income.

70.     The Loan Increase Rule, however, carried a short fuse for amending PPP applications. The rule allows lenders to make an additional disbursement to borrowers prior to the lender's submission of the SBA Form 1502 or by May 22, 2020.

71.     Despite knowing that PAMH had repeatedly asked about the inclusion of the Partner Income, Defendants did not contact PAMH to inform it of its window of opportunity to amend its PPP application to include the Partner Income. Instead, Defendants blithely ignored this new guidance and happily collected their fees from PAMH's PPP application while PAMH was deprived of its rightful Partner Income.

**Defendants Refuse to Amend PAMH's PPP Application**

72.     On or about June 23, 2020, PAMH learned of the Loan Increase Rule and immediately attempted to speak with a Kabbage representative in order to demand that Kabbage submit an amended PPP application for PAMH that included the Partner Income.

73.      Throughout the day on June 24, 2020, Heaton, along with other PAMH employees and principals, attempted to contact Kabbage by phone (repeatedly disconnected), email (received generic, autoreply response included above), and through PAMH's Kabbage web account portal (webpage pinwheel perpetually spun with no web access). Needless to say, PAMH was unable to speak with anyone at Kabbage that day.

74.      Finally, on June 25, 2020, Derek Anderson ("Anderson") an attorney and principal at PAMH, spoke with a representative at Kabbage who identified himself as Tanner.

75.     During the call, Tanner conceded that Kabbage now acknowledged that K-1 partner income could be included on PPP applications. However, Tanner stated that PAMH could not amend its application pursuant to include the Partner Income because there was insufficient time to amend the application and because, even if there was time, PAMH would have to wire all of the PPP loan funds it had received back to Kabbage.

76.     Tanner was mistaken on all accounts.

77.     On July 3, 2020, President Trump signed legislation extending the application deadline for small businesses to apply for PPP loans through August 8, 2020.

78.     On July 7, 2020, PAMH sent Defendants a letter (the "Demand Letter") requesting that they assist PAMH in amending and submitting an amended PPP application in order to receive the Partner Income as allowed by the SBA and acknowledged by Kabbage.

79.     Altabank did not respond to the Demand Letter.

80.     In a July 10, 2020 email to Anderson,  Kabbage, through its in-house legal counsel Elizabeth Maiellaro ("Maiellaro"), acknowledged receipt of the Demand Letter and stated, "I'll look into the matter and will get back to you as soon as possible next week."

81.     Five days later, in response to a request for an update from Anderson, Maiellaro told Anderson that she was "working through this inquiry and will get back to you as soon as possible."

82.     On July 17, 2020, after hearing nothing from Maiellaro, Anderson contacted Maiellaro by email to request that Kabbage respond to the Demand Letter.

83.     Maiellaro responded by promising to reach out to Anderson as soon as possible, hopefully by the end of day Monday (July 20th).

84.     Finally, on July 22, 2020, two weeks after PAMH sent the Demand Letter, Maiellaro told Anderson that Kabbage "is not in a position to amend the loan amount, primarily because it is not permitted to do so by the SBA."

85.     Only Kabbage can amend PAMH's PPP application to claim the allowed Partner Income since Kabbage was PAMH's original loan agent and submitted PAMH's application.

86.     In fact, PAMH's attempts to amend its PPP application through three other PPP lenders were each rejected because Kabbage held PAMH's "E-Tran Number," and thus no other lender could amend PAMH's application.

87.     Kabbage's stated refusal to amend PAMH's PPP application to include the Partner Income, PAMH has deprived PAMH of the Partner Income.

## FIRST CAUSE OF ACTION
### (Negligence – Against Kabbage)

88.     PAMH hereby incorporates by reference the allegations set forth above as if fully set forth herein.

89.     Kabbage owed a duty to PAMH as its loan agent and processor to educate itself about the PPP and to understand what amounts constituted eligible payroll costs such that PAMH would apply for, and receive, the maximum amount allowable under the PPP.

90.     Kabbage owed a duty to PAMH to keep apprised and abreast of amendments and clarifications of the PPP through SBA publications such as the Partner Income Rule and Loan Increase Rule.

91.     Kabbage owed a duty to PAMH to aid PAMH to receive the full amount of PPP funds PAMH was entitled to receive under federal law.

92.     Kabbage materially breached its duties to PAMH by: (1) representing to PAMH that Partner Income must not be included on PAMH's PPP application as a payroll cost despite the fact that the Partner Income Rule had been published prior to Kabbage's mistaken representation; (2) failing to read and/or understand the Partner Income Rule; (3) failing to notify PAMH, after knowing that PAMH had repeatedly inquired about the eligibility of the Partner Income to be included in its PPP application, of its right to amend its PPP application under the Loan Increase Rule to capture the Partner Income; (4) failing to read and/or understand the Loan Increase Rule; (5) failing to respond in a timely manner to PAMH's repeated requests regarding its PPP loan; and (6) refusing to assist PAMH in amending its PPP application to receive the Partner Income as allowed under both the Partner Income Rule and Loan Increase Rule.

93.     Kabbage's breach of duties was the proximate cause of PAMH being deprived of $145,833 in PPP funds to which it was entitled, and which the CARES Act intended that it receive.

94.     PAMH has in fact suffered damages in the amount of the $145,833 in lost PPP funds due to Kabbage's negligence.

## SECOND CAUSE OF ACTION
### (Negligence - Altabank)

95.     PAMH hereby incorporates by reference the allegations set forth above as if fully set forth herein.

96.     Altabank owed a duty to PAMH as its banker and as an SBA approved PPP lender to educate itself about the PPP and to understand what amounts constituted eligible payroll costs under PPP such that PAMH would apply for, and receive, the maximum amount allowable under the PPP.

97.     Altabank owed a duty to PAMH as its banker and as PAMH's first point-of-contact regarding the PPP to provide accurate information to PAMH about the PPP.

98.     Altabank owed a duty to PAMH as its banker and as an SBA approved PPP lender to partner with a competent and reputable loan agent that Altabank knew, or should have known, its clients such as PAMH would use based on Altabank's referral and/or partnership.

99.     Altabank materially breached its duties to PAMH by: (1) representing to PAMH on multiple occasions that the Partner Income could not be included as a payroll cost on PAMH's PPP application; (2) failing to contact PAMH to correct its prior incorrect representations regarding the Partner Income after the Partner Income Rule was published; (3) failing to contact PAMH to correct its prior incorrect representations regarding the Partner Income after the Loan Increase Rule was published; and (4) partnering with, and referring, Kabbage as a PPP loan agent.

100.    Altabank's breach of duties was the proximate cause of PAMH not receiving $145,833 in PPP funds to which it was entitled, and which the CARES Act intended that it receive.

101.    PAMH has in fact suffered damages in the amount of the $145,833 in lost PPP funds due to Altabank's negligence.

## THIRD CAUSE OF ACTION
### (Negligent Misrepresentation – Kabbage & Altabank)

102.    PAMH incorporates by reference the allegations set forth above as if fully set forth herein.

103.    Kabbage and Altabank carelessly or negligently made false representations to PAMH that Partner Income could not be included as an eligible payroll cost on its PPP application.

104.    Kabbage also made a false representation to PAMH that in order to claim additional PPP funds under the Loan Increase Rule, PAMH was required to return all of the PPP funds it had previously received.

105.    PAMH relied on Kabbage's and Altabank's false representations to its detriment.

106.    PAMH suffered a loss in the amount of the $145,833 in lost PPP funds due to its reliance on Kabbage's and Altabank's negligent misrepresentations.

## FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty – Kabbage)

107.    PAMH incorporates by reference the allegations set forth above as if fully set forth herein.

108.    As PAMH's PPP loan agent, Kabbage had a fiduciary relationship with PAMH.

109.    Kabbage breached its fiduciary duty to PAMH by: (1) erroneously representing to PAMH that Partner Income must not be included on PAMH's PPP application as a payroll cost

despite the fact that the Partner Income Rule had been published prior to Kabbage's mistaken and negligent representation; (2) failing to read and/or understand the Partner Income Rule; (3) failing to notify PAMH, after knowing that PAMH had repeatedly inquired about the eligibility of the Partner Income to be included in its PPP application, of its right to amend its PPP application to capture the Partner Income under the Loan Increase Rule; (4) failing to read and/or understand the Loan Increase Rule; (5) failing to respond in a timely manner to PAMH's repeated requests regarding its PPP loan; and (6) refusing to assist PAMH in amending its PPP application to receive the Partner Income as allowed under both the Partner Income Rule and Loan Increase Rule.

110.    Kabbage's breach of its fiduciary duty damaged PAMH in the amount of the $145,833 in lost PPP funds.

111.    The damages PAMH suffered were actually and proximately caused by Kabbage's breach of its fiduciary duty to PAMH.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    On Plaintiff's First Cause of Action, asserting a negligence claim against Kabbage, for Plaintiff's general, compensatory, and consequential damages resulting from Kabbage's negligence, in an amount to be proved at trial, but not less than $145,833.00, plus post-judgment interest at the legal rate, and further amounts as necessary to equalize the tax-free status of forgiven PPP loans.

2.    On Plaintiff's Second Cause of Action, asserting a negligence claim against Altabank, for Plaintiff's general, compensatory and consequential damages resulting from Defendant's negligence, in an amount to be proved at trial, but not less than $145,833.00, plus

post-judgment interest at the legal rate, and further amounts as necessary to equalize the tax-free status of forgiven PPP loans.

3.      On Plaintiff's Third Cause of Action, asserting a negligent misrepresentation claim against Kabbage and Altabank, for Plaintiff's general, compensatory and consequential damages resulting from Defendant's negligence, in an amount to be proved at trial, but not less than $145,833.00, plus post-judgment interest at the legal rate, and further amounts as necessary to equalize the tax-free status of forgiven PPP loans.

4.      On Plaintiff's Fourth Cause of Action, asserting a breach of fiduciary duty claim against Kabbage, for Plaintiff's general, compensatory and consequential damages resulting from Defendant's negligence, in an amount to be proved at trial, but not less than $145,833.00, plus post-judgment interest at the legal rate, and further amounts as necessary to equalize the tax-free status of forgiven PPP loans.

5.      For such other and further relief as the Court deems just and equitable under the circumstances.

DATED this 13th day of August 2020.

**PIA ANDERSON MOSS HOYT**

/s/ Anthony M. Grover
William O. Kimball
Anthony M. Grover
*Attorneys for Plaintiff PAMH*

William O. Kimball (9460)
Anthony M. Grover (10426)
**PIA ANDERSON MOSS HOYT, LLC**
136 E. South Temple, Suite 1900
Salt Lake City, UT 84111
Telephone: 801-350-9000
Facsimile: 801-350-9010
Email: bkimball@pamhlaw.com
          tgrover@pamhlaw.com

*Attorneys for Plaintiff Pia Anderson Moss Hoyt, LLC*

---

### IN THE THIRD JUDICIAL DISTRICT COURT
### IN AND FOR SUMMIT COUNTY, STATE OF UTAH

| | |
|---|---|
| PIA ANDERSON MOSS HOYT, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>KABBAGE, INC., a Delaware corporation, and ALTABANK, a Utah corporation,<br><br>Defendants. | **NOTICE OF DISMISSAL WITHOUT PREJUDICE AS TO DEFENDANT ALTABANK**<br><br>Case No. 200905238<br><br>Judge Kara Pettit |

Pursuant to Rule to Utah R. Civ. P. 41(a)(1)(A)(i), Plaintiff Pia Anderson Moss Hoyt, LLC hereby gives notice that defendant Altabank is dismissed without prejudice. Since Altabank has not served an answer or motion for summary judgment, no court order is required. *See* Utah R. Civ. P. 41(a)(1)(A).

DATED this 4th day of September 2020.

**PIA ANDERSON MOSS HOYT**

/s/ Anthony M. Grover
William O. Kimball
Anthony M. Grover
*Attorneys for Plaintiff PAMH*

## CERTIFICATE OF SERVICE

I hereby acknowledge that on this 4th day of September 2020, a true and correct copy of

the foregoing **NOTICE OF DISMISSAL WITHOUT PREJUDICE AS TO DEFENDANT**

**ALTABANK** was filed using the Court's electronic filing system and was served via U.S. mail,

postage prepaid, to the following:

_Via Email_
Elizabeth Maiellaro
Kabbage, Inc.
925B Peachtree Street NE
Atlanta, Georgia 30309
emaiellaro@kabbage.com
*Attorney for Defendant Kabbage, Inc.*

Altabank
Attn: Legal Department
P.O. Box 307
American Fork, Utah 84003


/s/ Mandy Pruitt_____

# EXHIBIT B

Exhibit B - Proof of Service

Job #  4817105
Ref #  200905238

# Affidavit of Process Server

In The Third Judicial District Court of Salt Lake County, State of Utah
(NAME OF COURT)

| Pia Anderson Moss Hoyt, LLC, a Utah limited liability company | VS | Kabbage, Inc., a Delaware corporation, et al | 200905238 |
| PLAINTIFF/PETITIONER | | DEFENDANT/RESPONDENT | CASE NUMBER |

I Danielle Stevens, being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized to perform said service.

Service: I served _____ Kabbage, Inc. _____
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) Summons; and Complaint with Jury Trial Demanded (Received Aug 26, 2020 at 11:11am EDT)
by leaving with _____ Lynanne Gares, Litigation Management Services Leader Authorized to Accept _____
NAME/RELATIONSHIP/TITLE

Service Address: _____ Corporation Service Company, Registered Agent 251 Little Falls Drive, Wilmington, DE 19808 _____

On _____ Thu, Aug 27 2020 _____          AT _____ 01:52 PM _____
DATE                                                    TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on _____
DATE

from _____
CITY          STATE          ZIP

Manner of Service:
☐ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of 18 and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☒ **Corporate:** By personally delivering copies to the person named above.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.
☐ Inquired if subject was a member of the U.S. Military and was informed they are not.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address ☐ Moved, Left no Forwarding ☐ Service Cancelled by Litigant ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist ☐ Other _____

**Description:** Age _35_ Sex _Female_ Race _Caucasian_ Height _5'6"_ Weight _135_ Hair _Brown_ Beard _____ Glasses _____

Date: August 28, 2020 _____

_____
SIGNATURE OF PROCESS SERVER

Subscribed and sworn before me a Notary Public of the State
of Delaware on August 28, 2020 (Date)

_____
SIGNATURE OF NOTARY PUBLIC
NOTARY PUBLIC for the State of Delaware

KIMBERLY J. RYAN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires March 31, 2024